# FORD FARMS, LTD., Plaintiff-Appellant,

v.

# WISCONSIN ELECTRIC POWER COMPANY, Defendant-Respondent.†

Court of Appeals

*No. 87–1977. Submitted on briefs April 20, 1988.—Decided May 18, 1988.*

(Also reported in 430 N.W.2d 94.)

† Petition to review denied. BABLITCH, J., took no part.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *William J. Corrigan* of *Menn, Nelson, Sharratt, Teetaert & Beisenstein, Ltd.,* of Appleton.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Terrance C. Thom* and *Dorothy H. Dey* of *Prosser, Wiedabach & Quale, S.C.,* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. Ford Farms, Ltd., appeals from a grant of summary judgment which dismissed its claims against Wisconsin Electric Power Company (WEPCO). The basis for dismissal was the expiration of the statute of limitations. Ford Farms contends that summary judgment was inappropriate because a factual dispute exists as to the date of discovery—the date on which the cause of action accrued. We are persuaded by Ford Farms' argument and reverse accordingly.

Ford Farms filed this action on March 27, 1985, alleging that certain financial losses in its dairy farm operation had been caused by "stray voltage." It was further alleged that WEPCO had negligently failed to: (1) design and implement a reasonably safe electrical distribution system; (2) warn Ford Farms of the hazards thereof; and (3) take remedial measures to correct the allegedly deficient system. Ford Farms claimed damages from 1977 to 1984, and further averred that it did not discover the cause of the injury until 1984.

WEPCO moved for summary judgment on the grounds that the relevant statute of limitations, sec. 893.52, Stats., barred the cause of action. WEPCO conceded that the discovery rule of *Hansen v. A.H. Robins Co.*, 113 Wis. 2d 550, 560, 335 N.W.2d 578, 583 (1983), applied to Ford Farms' case, but argued that Ford Farms had discovered the cause of the problem in 1977, thus requiring the claim to be brought no later than 1983. *See* sec. 893.52.

To support its position, WEPCO submitted excerpts of depositions which noted Ford Farms' awareness of stray voltage problems at dairy farms in general. Stressed in these excerpts is Ford Farms' decision to buy a Germania milking parlor in 1977 to minimize any potential stray voltage problems.

In opposition to the motion, Ford Farms filed two short affidavits by its personnel which noted the variety of remedies undertaken by Ford Farms to correct the production problems. Both affidavits also stated that "[i]t was not until early 1984 that we discovered [the] stray voltage."

WEPCO replied, challenging many factual assertions in Ford Farms' brief and moving to strike them as unsupported by the record. WEPCO also attacked

the affidavits as stating ultimate facts rather than evidentiary facts. The trial court allowed Ford Farms additional time to supplement its response, which it did through excerpts of deposition testimony.

In its decision, the trial court disregarded Ford Farms' earlier affidavits as stating ultimate facts. *See* sec. 802.08(3), Stats.; *West Side Bank v. Marine Nat'l Exch. Bank,* 37 Wis. 2d 661, 665–66, 155 N.W.2d 587, 589–90 (1968). The trial court also ruled that the later deposition testimony did not establish any evidentiary fact because the deponent "was vague, uncertain and lacked recall." Accordingly, the trial court found WEPCO entitled to summary judgment.

Summary judgment methodology is the same for trial and appellate courts. *In re Cherokee Park Plat,* 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582 (Ct. App. 1983). Under that methodology in this case, we first examine the pleadings to determine whether claims have been stated and a material factual issue is present. *Id.* at 116, 334 N.W.2d at 582–83. If the complaint states a claim and the pleadings show the existence of factual issues, we examine WEPCO's affidavits for evidentiary facts admissible in evidence or other proof to determine whether that party has made a *prima facie* case for judgment. *Id.* at 116, 334 N.W.2d at 583. If the moving party is the defendant, as here, WEPCO must show a defense which would defeat the claim. *Id.* If WEPCO has done so, we examine the affidavits submitted by Ford Farms for evidentiary facts and other proof to determine whether a genuine issue exists as to any material fact, or whether reasonable conflicting inferences may be drawn from undisputed facts, therefore requiring a trial. *Id.*

Summary judgment methodology prohibits the trial court from deciding an issue of fact. *Id.* The court determines only whether a factual issue exists, resolving doubts in that regard against the party moving for summary judgment, here WEPCO. *Id.* If Ford Farms' affidavits allow for different interpretations or reasonable persons might disagree as to their significance, it is improper to grant summary judgment. *Grams v. Boss,* 97 Wis. 2d 332, 339, 294 N.W.2d 473, 477 (1980).

Ford Farms argues that the error occurred in the last step of the methodology—examining its own affidavits for genuine issues of material fact. The question of fact, Ford Farms continues, is the date of its discovery of the nature and cause of its injuries. We must therefore resolve: (1) whether there is a genuine dispute as to the date of discovery; and (2) if so, whether such a dispute presents a question of fact for the jury.

We, like the trial court, must look to Ford Farms' affidavits to determine if there is a dispute. The trial court struck the first two short affidavits as stating ultimate facts. While we question the correctness of this ruling as it applies to *every* statement contained in those affidavits, we do not find it necessary to review that ruling, turning instead to the deposition excerpts contained in the later affidavit.

The trial court discounted the deposition of Charles Ford, finding that his answers were "vague, uncertain and lacked recall." In support of this finding, the trial court quoted an exchange between Ford and WEPCO's attorney where, in fact, many of Ford's answers were ambivalent. However, there were other excerpts of Ford's deposition which were unequivocable. For example, Ford commented that: (1) Ger-

mania checked everything in the parlor every sixty to ninety days ever since the milking parlor was installed but could not find what was causing the problems; (2) Germania never checked for stray voltage because the Germania system keeps electricity out of the parlor "so you just didn't think that it could be a problem"; and (3) the eventual call to the electrician in 1984 was done "[b]ecause it was sort of a process of elimination," because "[w]e thought we had everything else—we didn't know anything else to do or to check to try and solve our problem."

In determining whether Ford's deposition puts the date of discovery at issue, we must look to what constitutes discovery. Of particular assistance is *Borello v. U.S. Oil Co.,* 130 Wis. 2d 397, 388 N.W.2d 140 (1986).

The plaintiff in *Borello* had a furnace installed in December 1977. *Id.* at 400, 388 N.W.2d at 141. Within a few weeks, she started to complain of headaches, dizziness and respiratory problems. *Id.* She believed that the furnace caused her problems. *Id.* at 401, 388 N.W.2d at 141. She also saw a number of doctors about her complaints. They told her that her problems were probably not related to the furnace. *Id.* Finally, in 1979, a doctor diagnosed her problem as "metal fume fever" caused by the defective furnace. *Id.*

█

The supreme court concluded that Borello discovered the probable cause of her injuries in October 1979, on the date that her condition was diagnosed. *Id.* at 404–05, 388 N.W.2d at 143. The court rejected the argument that the discovery date is the date on which an injury first appears. *Id.* at 408, 388 N.W.2d at 144. "[A] cause of action will not accrue until the plaintiff discovers, or in the exercise of reasonable diligence

should have discovered, not only the fact of injury but also that the injury was probably caused by the defendant's conduct or product." *Id.* at 411, 388 N.W.2d at 146. In a situation where "the cause and effect relationship is not readily apparent, as it would be in the typical tort claim, *e.g.,* an automobile accident," a lay person's subjective belief of the cause of an injury is not sufficient to start the statute of limitations running. *Id.* at 412, 388 N.W.2d at 146.

> [T]he statute of limitations will not commence to run against a claimant merely because the claimant knew she was injured and had a suspicion or a hunch, later confirmed, that defendant's conduct was a cause of the injury. ... [D]iscovery does not occur until there is information available to the claimant of the nature of her injury, the cause of her injury, and the defendant's part in that cause.

*Id.* at 414, 388 N.W.2d at 147.

Thus, we glean from *Borello* that even if Ford Farms installed a Germania parlor because of a subjective concern regarding stray voltage, it cannot be said as a matter of law that it "discovered" the nature and cause of its alleged injuries at that time. Mindful of the requirement that any question regarding whether a factual dispute exists should be resolved in favor of Ford Farms, *see In re Cherokee Park Plat,* 113 Wis. 2d at 116, 334 N.W.2d at 583, we conclude that the deposition excerpts offered by Ford Farms create a genuine dispute as to a material fact—the date of discovery.

No Wisconsin case has yet held whether the date of discovery in tort actions is a question of fact for the jury or a question of law for the trial court. We are

aware that cases have held that the application of a statute of limitations to the facts is a question of law. *See, e.g., Kempfer v. Evers*, 133 Wis. 2d 415, 417, 395 N.W.2d 812, 813 (Ct. App. 1986). After careful examination of these cases, we conclude that they are easily distinguishable from the situation before us.

For example, in *Segall v. Hurwitz*, 114 Wis. 2d 471, 339 N.W.2d 333 (Ct. App. 1983), the legal question was whether the statute of limitations on a conspiracy claim begins to run on the date of the first wrong or if it runs separately against each wrong. *Id.* at 481–82, 339 N.W.2d at 338–39. *Kroeger v. Kroeger*, 120 Wis. 2d 48, 49, 353 N.W.2d 60, 60–61 (Ct. App. 1984), decided whether independent actions for child support are governed by the twenty-year limitation for actions on judgments or by a six-year limitation. Lastly, *Kempfer* resolved the legal question of whether the discovery rule also required knowledge by the plaintiff of a possible legal remedy before the cause of action would accrue. *Kempfer*, 133 Wis. 2d at 419, 395 N.W.2d at 814.

None of these cases involved a situation such as is before us. WEPCO and Ford Farms generally agree that the discovery rule applies, and they further agree on its basic legal interpretation. However, the parties are in dispute over the evidentiary fact of when Ford Farms actually did discover or should have discovered the nature and cause of its injury. We consider this situation to be similar to *Tallmadge v. Skyline Construction, Inc.*, 86 Wis. 2d 356, 272 N.W.2d 404 (Ct. App. 1978).

In *Tallmadge*, the plaintiffs brought an action for property damage caused by negligent construction. *Id.* at 358, 272 N.W.2d at 404. Being prior to the *Hansen* discovery rule, the cause of action was held to accrue

when the evidence of injury was sufficient enough to alert the plaintiff to the possibility of a defect, even if the plaintiff could not identify the causal factor. *Id.* at 359, 272 N.W.2d at 405.

The court of appeals in *Tallmadge* then stated that "[o]rdinarily, the question of when such a resulting injury occurred will be a question of fact for the jury." *Id.* at 360, 272 N.W.2d at 405. However, the *uncontroverted* evidentiary facts in *Tallmadge* were such that the trial court properly determined the date of injury as a matter of law. *Id.* at 360, 272 N.W.2d at 406.

Here, the facts regarding discovery are not uncontroverted. We therefore conclude that a significant jury question may be presented in this case as to when Ford Farms knew or should have known the nature and cause of its alleged injury. Such a determination is in accord with the federal courts' handling of discovery questions, *see, e.g., Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387–88 (10th Cir. 1985), as well as other state court decisions, *see* 54 C.J.S. *Limitation of Actions* sec. 301 (1987) and cases cited therein.

The trial court's grant of summary judgment is reversed and the cause remanded. Before we dispose of this appeal, however, we take note of the alternative arguments raised by Ford Farms regarding continuum of negligence theories and splitting causes of action. It is unnecessary for us to address these issues, but we are cognizant that they may resurface on remand depending on the jury's determinations regarding the date of discovery. Given the fact-intensive state of the record and the absence of a trial court decision on these issues, we consider it improvident to

do more than direct the trial court's and counsels' attention to *Tamminen v. Aetna Casualty & Surety Co.,* 109 Wis. 2d 536, 327 N.W.2d 55 (1982), as well as *Robinson v. Mount Sinai Medical Center,* 137 Wis. 2d 1, 402 N.W.2d 711 (1987).

*By the Court.*—Judgment reversed and cause remanded.