Jean REZNICHEK, Plaintiff-Appellant,

v.

Stan GRALL, Defendant,

WISCONSIN FARMERS MUTUAL INSURANCE
COMPANY, Defendant-Respondent.

Court of Appeals

*No. 88-2000. Submitted on briefs March 29, 1989.—Decided
May 10, 1989.*

(Also reported in 442 N.W.2d 545.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Terence P. Fox* of *Dewane, Dewane & Kummer,* of Manitowoc.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Kristi L. Fry* of *Herrick, Bilka & Fry, S.C.,* of Fond du Lac.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. Jean Reznichek appeals from a grant of summary judgment which dismissed Wisconsin Farmers Mutual Insurance Company (Farmers Mutual) from the case. Farmers Mutual insures the Whitelaw Bar and Bowl, which is owned and operated by the defendant, Stan Grall. The trial court ruled that Farmers Mutual's policy does not provide coverage for Grall's alleged trans-

mission of herpes to Reznichek while on the premises. We agree with the trial court's conclusion and affirm.

The facts necessary to a resolution of this appeal are as follows. Grall is the owner and operator of an establishment named the Whitelaw Bar and Bowl. Reznichek met Grall when she was sixteen; he was thirty-four. The two commenced a sexual relationship on September 20, 1984. The majority, if not all, of their contacts took place after business hours on the premises of the Whitelaw Bar and Bowl in a back room.[1]

Reznichek was diagnosed as having genital herpes in February 1985. She brought this action against Grall for intentional and/or negligent transmission of a sexually-transmitted disease, claiming that she had had no sexual relations with anyone else.[2] Farmers Mutual was also named as a defendant because it insured the premises of the Whitelaw Bar and Bowl.

Farmers Mutual moved for summary judgment on the basis that no coverage existed for Reznichek's claim. Following written and oral arguments, the trial court granted Farmers Mutual's motion. Reznichek appeals.

Summary judgment methodology is oft-stated and need not be repeated here. *See generally Ford Farms,*

---

[1] The parties raise certain facts relative to Reznichek's participation in cleaning and other tasks in the bowling alley, none of which we consider relevant to the issue. We further note that many of these factual statements in Reznichek's briefs are based on excerpts of depositions which appear in her appendix but not in the record. The appendix may not be used to supplement the record, and we accordingly limit our recitation of the facts to those supported by deposition excerpts which are in the record.

[2] It was not raised in the trial court, nor do we discuss, whether a cause of action for intentional or negligent transmission of a sexually-transmitted disease is recognized in Wisconsin and adequately stated by the pleadings.

*Ltd. v. Wisconsin Elec. Power Co.,* 145 Wis. 2d 650, 654–55, 430 N.W.2d 94, 95 (Ct. App. 1988). Reznichek first argues that summary judgment was inappropriate because material facts were at issue. *See id.* She contends that the trial court did not consider whether Grall expected coverage for all tortious acts, claiming that such a belief is relevant to a determination of the actual coverage.

Whatever merit this argument may have, we need not address it here because no such facts were presented to the trial court in opposition to the motion for summary judgment. When a defendant establishes a defense which would defeat the claim, the opponent of the motion bears the burden of establishing an issue of material fact. *Id.* at 654, 430 N.W.2d at 95. No affidavits were submitted by Reznichek, and the arguments of her counsel to the trial court are insufficient to raise an issue of fact.

Reznichek's other argument is that Farmers Mutual did not establish that it was entitled to judgment as a matter of law. This issue requires interpretation of the insurance policy, which is a question of law reviewed without deference to the trial court's decision. *Lechner v. Scharrer,* 145 Wis. 2d 667, 672, 429 N.W.2d 491, 494 (Ct. App. 1988).

The declarations page of the policy identifies the coverage as "Owners', Landlords' and Tenants' Liability Insurance."[3] The description of hazards lists the covered premises and operations as "Taverns and Restaurants" and "Bowling Alleys." The liability coverage of the policy is as follows:

---

[3] We agree with Farmers Mutual that the coverage is not comprehensive general liability insurance.

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> > Coverage A. bodily injury or
> > Coverage B. property damage
>
> to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto . . .. [Emphasis deleted.]

Reznichek concedes that the sexual relationship itself was not necessary or incidental to the ownership, maintenance or use of the premises.[4] However, she argues that "the method [Grall] used in which to transmit the disease was certainly incidental to the premises." This is an inaccurate characterization of the coverage. It is not enough that the occurrence be incidental to the premises; it must be incidental to the ownership, maintenance or use of the premises.

The term "incidental" was considered by the supreme court in *Home Mutual Insurance Co. v. Insurance Co.,* 20 Wis. 2d 48, 121 N.W.2d 275 (1963). The court interpreted the phrase "operations necessary or incidental thereto" as meaning "operations necessary or incidental to the business designated." *Id.* at 52, 121 N.W.2d at 277. The court also looked to the legal dictionary definition of "incidental," the current edition of which reads as follows:

> Depending upon or appertaining to something else as primary; something necessary, appertaining to, or

---

[4] The policy requires: (1) that the injury be caused by an occurrence; and (2) that it arise out of the maintenance, etc., of the premises. Because we conclude that the second prong is not met, we do not discuss the first prong.

depending upon another which is termed the principal; something incidental to the main purpose.

*Black's Law Dictionary*, 686 (5th ed. 1979); *see also Home Mutual*, 20 Wis. 2d at 54, 121 N.W.2d at 278.

The court further stated:

> [I]n the instant case it would take quite a stretching of the policies to say that the company and the insured intended to include in the coverage of the Texaco station any even remote operation that would involve an employee of the Texaco station but which would not really involve an activity or operation of the Texaco station itself.

*Id.*

Reznichek seeks to distinguish *Home Mutual* on the basis of its more specifically worded coverage clause. There, the hazards covered by the policy were stated as "[t]he ownership, maintenance or use of the premises for the purpose of an automobile repair shop, service station, storage garage, or public parking place, and all operations necessary or incidental thereto." *Id.* at 51, 121 N.W.2d at 277 (emphasis deleted).

Here, although the liability coverage clause does not state the particular purposes of the premises, we must read the insurance policy in its entirety. *See Kraemer Bros. v. United States Fire Ins. Co.*, 89 Wis. 2d 555, 562, 278 N.W.2d 857, 860 (1979). We therefore refer to the policy statement describing the hazards as "Premises—Operations" of taverns, restaurants and bowling alleys. To give meaning to this description of hazards, it is necessary to read the policy as covering the operation, maintenance or use of the premises *as a tavern, restaurant or bowling alley*. To do otherwise would lead to the absurd result of allowing the owner to completely change

the purpose of the premises (*e.g.*, from a bowling alley to a roller derby) and still maintain coverage. Absurd results are to be avoided, *Olguin v. Allstate Ins. Co.,* 71 Wis. 2d 160, 165, 237 N.W.2d 694, 697 (1976), and insurers should not be bound to risks which they did not contemplate and for which they received no premium, *Shelley v. Moir,* 138 Wis. 2d 218, 222, 405 N.W.2d 737, 739 (Ct. App. 1987).

This interpretation is also supported by the policy's use of the phrase "arising out of," which is ordinarily understood to mean "originating from, growing out of or flowing from," or "some causal relationship." *Id.* at 223, 405 N.W.2d at 739. Here, there is no causal relationship between the injury to Reznichek and the ownership, maintenance or use of the premises as a tavern, restaurant or bowling alley.

Reznichek cites various cases from other jurisdictions which have found insurance coverage for the negligent sexual transmission of a disease. *E.g., North Star Mut. Ins. Co. v. R.W.,* 431 N.W.2d 138 (Minn. Ct. App. 1988). None of the cited cases deals with the particular type of insurance policy we have here, *i.e.,* one limited to particular uses of certain premises. We do not conclude that there can never be insurance coverage for sexually transmitted diseases. We decide only that this particular policy affords no such coverage.

The trial court properly granted Farmers Mutual's motion for summary judgment. Accordingly, Farmers Mutual's dismissal from the case is affirmed.

*By the Court.*—Judgment affirmed.