COURT OF APPEALS
DECISION
DATED AND FILED

February 13, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1276**

STATE OF WISCONSIN

Cir. Ct. No. **2024SC168**

IN COURT OF APPEALS
DISTRICT IV

MICHELLE LYNN MCNEIL,

    PLAINTIFF-APPELLANT,

  V.

CARVANA, LLC,

    DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Monroe County: TODD L. ZIEGLER, Judge. *Affirmed*.

¶1 BLANCHARD, J.[1] In this small claims proceeding, Michelle McNeil, pro se, pursues a claim for money damages against a vehicle

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2021-22) ("Cases under ch. 799"). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

dealership, Carvana, LLC. McNeil's complaint arises from a retail purchase agreement ("the agreement") between McNeil and Carvana. Under the agreement, Carvana sold McNeil a used Hyundai crossover sport utility vehicle ("the Hyundai") and McNeil off-set the purchase cost with the value of the trade-in of her Lincoln crossover sport utility vehicle ("the Lincoln"). McNeil alleges that she experienced problems with the Hyundai after she took possession of it. She further alleges that Carvana did not allow her to return the Hyundai to Carvana within the seven-day return period specified in the agreement. She claims breach of contract, negligence, "fraud and deception," and unspecified "multiple violations of consumer protection laws" and "warranty issues." At the end of a bench trial, the court dismissed McNeil's complaint on the ground that McNeil failed to offer sufficient evidence to support any identifiable claim. McNeil appeals. I affirm.

## BACKGROUND

¶2 McNeil and Carvana entered into the agreement in September 2023. It included the following elements. McNeil would take delivery of the Hyundai from Carvana, at a sales price of $23,590.[2] McNeil would trade in the Lincoln to Carvana, with a trade-in allowance valued at $16,821. McNeil would make a down payment of $16,821 and then owe Carvana a balance of about $7,413, which included financing interest.

---

[2] McNeil objects to use of the verb "delivery" to describe how she actually obtained the Hyundai from Carvana. But the agreement speaks in terms of McNeil "tak[ing] delivery." Further, McNeil fails on appeal to identify anything about the details of how she obtained the Hyundai from Carvana that the circuit court needed to take into account but failed to take into account before the court could properly dismiss this action.

2

¶3    Under the vehicle-return portion of the agreement, McNeil could "test own" the Hyundai after she took delivery, but then she could return it to Carvana and "terminate" the agreement if certain conditions were met. Notable for purposes of this appeal is the following condition needed to trigger an allowable return of Hyundai and termination of the agreement: McNeil was obligated to "alert Carvana" that she wanted to return the Hyundai "by phone, text, email, or chat prior to 8 pm EST on the 7th calendar day after" McNeil took delivery.

¶4    Carvana also provided McNeil with a limited warranty on the Hyundai. The warranty had a term of 100 days or 4,189 miles (whichever lapsed first) and a $100 "in-network" deductible and a $350 "out-of-network" deductible.

¶5    In March 2024, McNeil, pro se, filed the complaint to initiate this action, seeking $10,000 in damages. McNeil did not dispute in the circuit court that Carvana accepted her Lincoln as a trade-in and that she took delivery of the Hyundai. But she alleged that the Hyundai was defective and that Carvana refused to accept her request, which she allegedly made within the seven-day return period, to be permitted to return the Hyundai to Carvana.

¶6    After both sides submitted pleadings and exhibits to the circuit court, the court held a bench trial. McNeil continued to represent herself at trial. She was permitted to testify (answering questions posed by the court) and to present extensive argument, which included a number of back-and-forth exchanges with the court. Carvana was represented by Malik McKinney, who identified himself as an Arizona-based senior legal analyst for Carvana. Like McNeil, McKinney testified by answering questions posed by the court and presented argument.

¶7    In dismissing the action, the circuit court concluded that McNeil failed to carry her burden of showing that she clearly communicated to Carvana through any means during the seven-day period that she wanted to return the Hyundai to Carvana or that Carvana made any misrepresentations to McNeil.  The court also implicitly determined that McNeil is not entitled to any damages from Carvana based on any legal theory advanced by McNeil.

### DISCUSSION

¶8    McNeil does not challenge the circuit court's interpretation of the vehicle-return aspect of the agreement.  Under this interpretation, if McNeil wanted to trigger Carvana's obligation to take back the Hyundai she had to clearly communicate to Carvana sometime during the seven days after she took delivery of the Hyundai that she wanted to return it.  Further, I see no other reasonable way to interpret the agreement.  *See **Mittnacht v. St. Paul Fire & Cas. Ins. Co.**, 2009 WI App 51, ¶4, 316 Wis. 2d 787, 767 N.W.2d 301 (issues involving contract interpretations are reviewed de novo by this court).

¶9    Instead, the primary focus of McNeil's arguments in the circuit court and again on appeal seems to be her contention that, within seven days of her taking delivery of the Hyundai, she clearly communicated to Carvana that she wanted to return it.  I conclude that the circuit court properly exercised its discretion in finding that she failed to show that she made such a communication at any time during the seven days, and I further conclude that the circuit court did not otherwise err in dismissing McNeil's complaint.  Evidence supporting the court's conclusion included unambiguous and unequivocal testimony by McKinney, which was credited by the circuit court, that a search of Carvana

4

records revealed no request by McNeil to return the Hyundai during the seven-day period.

¶10    McNeil's briefing on appeal is generally difficult to track and lacks many important features, such as consistent citations to the record and to relevant legal authority.   It includes many irrelevant or unclear references, including material from outside the record on appeal, which I must ignore.[3]   Nevertheless, I now address the possible arguments that I am able to discern.   Any aspect of McNeil's briefing on appeal that she intends to offer as an argument, but which is not addressed in this opinion, is not sufficiently developed to merit discussion.[4]

¶11    Across a number of her assertions and possible arguments, McNeil appears to operate from the false impression that, perhaps because she was representing herself, the circuit court had an obligation to identify potential evidence in her favor (either from within or from outside the documents that the parties submitted to the court) and to organize arguments on her behalf.   But regardless of the pro se status of any party, a court does not erroneously exercise its discretion when it does not consider evidence that a party does not call to the court's attention.   Courts presiding over small claims proceedings are directed to

---

[3]  On appeal, an appellate court may not consider documents that are not contained in the record on appeal. **State v. Pettit**, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).   A party's appendix on appeal may not be used to supplement the record. **Reznichek v. Grall**, 150 Wis. 2d 752, 754 n.1, 442 N.W.2d 545 (Ct. App. 1989).   It is the responsibility of the appellant, here McNeil, to ensure that the record on appeal is complete. *See Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26-27, 496 N.W.2d 226 (Ct. App. 1993).

[4]  To cite one example, at scattered points in her appellate briefing McNeil may intend to suggest bias, conflict, or unfair treatment by the circuit court, but she fails to provide support for any of these suggestions.   Further, the record reflects that the court was extremely patient and sincerely expressed sympathy to McNeil's concerns, while giving her a full opportunity to present any evidence and argument she might have to offer.   The record does not suggest any bias, conflict, or unfair treatment by the court.

allow "each party" to present evidence and argument "as reasonably required" under the circumstances. WIS. STAT. § 799.209(1). The parties, and not the court, develop arguments and establish the factual record in small claims proceedings, as in other civil proceedings. Nothing in § 799.209(1) creates an obligation for a court to call its own witnesses or to consider evidence not called to the attention of the court, and a court could only do these things to a limited degree, with careful consideration for its neutral role. *See State v. Garner*, 54 Wis. 2d 100, 104, 194 N.W.2d 649 (1972) (a judge "should not take an active role in trying the case" or act as an "advocate" for any party). And here, the court properly exercised its discretion in giving McNeil a full opportunity to present her case. In doing so, the court properly avoided assuming the role of advocate on her behalf, as she now suggests the court should have done.

¶12    McNeil apparently intends to argue that the circuit court erroneously exercised its discretion when it took into consideration arguments that Carvana made in its pretrial brief, together with the exhibits that Carvana filed on June 5, 2024, because the arguments and exhibits were submitted two days after the date that had been set by the court (on April 16, 2024) for the submission of exhibits to be used at the trial scheduled for June 11, 2024.[5] I reject this argument. Circuit courts have substantial discretion over the administration of proceedings assigned to them. *See Hefty v. Strickhouser*, 2008 WI 96, ¶¶29, 31, 312 Wis. 2d 530, 752 N.W.2d 820 (noting that a circuit court's "discretion to manage the court's calendar" is of "critical importance" and is "inherent to [the circuit court's]

---

[5] McNeil asserts that the circuit court "disqualified" her "submitted exhibits," and that her "exhibits were not allowed to be presented to the Judge the day of trial," but this is not accurate because the court admitted all offered exhibits.

function"). In addition, courts are to prioritize the efficient and rapid accomplishment of justice in small claims proceedings, and here the court's scheduling and evidentiary decisions were consistent with those goals. *See Littleton v. Langlois*, 37 Wis. 2d 360, 363, 155 N.W.2d 150 (1967) ("the objective of the small claims procedure is speedy and inexpensive justice"); *Columbia County v. Bylewski*, 94 Wis. 2d 153, 165-66, 288 N.W.2d 129 (1980) ("small claims procedure should be as summary as possible"). WISCONSIN STAT. § 799.209(1) provides that the court "shall conduct [small claims proceedings] informally, allowing each party to present arguments and proofs and to examine witnesses to the extent reasonably required for full and true disclosure of the facts." In sum, McNeil fails to show any unfairness or prejudice to her from these discretionary decisions, which were reasonable on their face.

¶13 McNeil makes assertions to the effect that the circuit court should have credited her testimony over the testimony given by McKinney. On a related point, McNeil challenges the court's reliance on the contents of one exhibit (trial Exhibit 50) offered by McKinney. Exhibit 50 purported to reflect online text messages exchanged between McNeil and a Carvana representative on September 19, 2023, which would have been at or near the close of the seven-day period.[6] McNeil's arguments are meritless. This court reviews the circuit court's

---

[6] Exhibit 50 purported to reflect the following exchange:

> [Carvana representative:] If you decide to return the [Hyundai], we cannot give your trade-in [the Lincoln] back. You would receive a check for the positive equity at your appointment.

> [McNeil:] Thanks[.] I probably will keep it[;] so far[,] it's a good vehicle. I will be getting it inspected [on] the 29th and I don't think there will be problem with it.

findings of fact under the clearly erroneous standard, which means the court's findings will not be reversed unless they are against the great weight and clear preponderance of the evidence. *Phelps v. Physicians Ins. Co. of Wis., Inc.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615; WIS. STAT. § 805.17(2). If called for, this court will "search the record for evidence to support the court's factual findings." *Laughland v. Beckett*, 2015 WI App 70, ¶20, 365 Wis. 2d 148, 870 N.W.2d 466. When a circuit court acts as a finder of fact and there is conflicting testimony, the circuit court is the ultimate arbiter of the credibility of the witnesses. *Stevenson v. Stevenson*, 2009 WI App 29, ¶14, 316 Wis. 2d 442, 765 N.W.2d 811. When more than one reasonable inference can be drawn from the evidence that could be credited, this court accepts the inference that is drawn by the trier of fact. *Id.* Applying these standards, McNeil fails to show clear error in the circuit court's explicit and implicit factual findings, or in its weighing of the significance of the purported September 19 text message exchanges reflected in Exhibit 50.

¶14 Further, McNeil does not raise a supported objection to the circuit court's admission into evidence and consideration of Exhibit 50, based on a lack of authentication or any other ground. She asserts that the court should have rejected Exhibit 50 as "disinformation," a "forgery," or "counterfeit." The factual basis for these assertions is not clear from what McNeil said at the trial or from what she now asserts on appeal. Nothing in Exhibit 50 appears to be inconsistent with other documents before the court and it was consistent with McNeil's own inability at various points during the trial to identify any time, during the seven-day period, when she clearly communicated to Carvana that she wanted to return the Hyundai to Carvana. As for the concept of proper authentication of Exhibit 50, a circuit court is obligated "simply to determine whether a fact-finder

8

could reasonably conclude evidence is what its proponent claims it to be." *See State v. Burch*, 2021 WI 68, ¶34, 398 Wis. 2d 1, 961 N.W.2d 314 (citing WIS. STAT. § 909.01). The court made such a determination here by considering the contents of Exhibit 50, together with related documents, and the testimony given by McNeil and McKinney. Having determined that Exhibit 50 was what its proponent claimed it to be, the court was free to determine the credibility and the weight that the court would ascribe to Exhibit 50. *See State v. Roberson*, 2019 WI 102, ¶25, 389 Wis. 2d 190, 935 N.W.2d 813.

¶15 McNeil separately suggests that Carvana breached the agreement or the limited warranty, or otherwise caused McNeil compensable injury or harm, by failing to pay for repairs to the Hyundai that Carvana was allegedly obligated to pay. These arguments were not well developed in the circuit court or on appeal. Carvana provided the circuit court with records reflecting compensation that it paid to McNeil based on various issues that she raised with Carvana before the trial. Further, the court at the trial asked probing questions of both sides on these issues, and was satisfied that no additional payments are due. Based on the record developed in the circuit court, McNeil fails to identify a legal theory under which Carvana owes her money for repairs.

¶16 McNeil raises various allegations to the effect that the circuit court should have determined that Carvana made misrepresentations to her. But as Carvana points out she raises most of these for the first time on appeal. The court squarely asked McNeil at the trial what misrepresentations she was claiming, and in her responses she did not refer to most of the allegations that she raises on appeal. This deprived both Carvana and the court of a fair opportunity to address these allegations. Accordingly, I do not address any allegation along these lines that McNeil did not mention when the court directly sought to explore this topic

with her. *See State v. Bollig*, 222 Wis. 2d 558, 564, 587 N.W.2d 908 (Ct. App. 1998) (arguments raised by appellants for the first time on appeal are generally deemed forfeited).

¶17     McNeil asserted at the trial that Carvana made misrepresentations on two topics:  the seven-day return policy and Carvana's safety inspection of the Hyundai before delivery to McNeil.  I address these in turn.

¶18     Regarding the seven-day return policy, McNeil suggested to the circuit court, and now suggests again on appeal, that Carvana refused to honor the policy.  The alleged misrepresentation apparently would be Carvana's failure to reveal that McNeil would not in fact be entitled to return of the Hyundai even if she communicated that request to Carvana within the seven-day period.  I reject this argument on the ground that the circuit court had an ample basis in the record to find that Carvana stood ready to honor the seven-day return policy and that McNeil failed to trigger the policy through a request made during the seven-day period.

¶19     Regarding the inspection, this involves what Carvana represented to McNeil was a 150-point safety inspection of the Hyundai that Carvana was to perform before McNeil took delivery.  The alleged misrepresentation apparently would be that Carvana failed to perform the inspection at all, failed to perform it adequately, or perhaps failed to reveal to her problems with the Hyundai that Carvana identified in the inspection.  It defeats any such argument that the circuit court had before it evidence that included the following:  what McKinney represented was a copy of Carvana's inspection report (showing "passing" grades in all of 150 categories); a copy of a diagnosis of the Hyundai by an automotive shop in Eau Claire, which McNeil obtained in December 2023, that reflected

"NORMAL OPERATION AT THIS TIME";[7] and McNeil's statement to Carvana, reflected in Exhibit 50, that the Hyundai is "a good vehicle…. I don't think there will be problem with it." *See supra* note 2. This record is more than sufficient to support the circuit court's conclusion that McNeil failed to show a misrepresentation involving the 150-point inspection or the condition of the Hyundai when McNeil took delivery of it.

¶20 Separately, McNeil cites various statutes involving the right to rescind contracts. But on appeal, as in the circuit court, she fails to develop these references into legal arguments that could support relief in this case based on the record in the circuit court. *See* WIS. STAT. § 136.02 (addressing "future service contracts"); WIS. STAT. § 423.202 (addressing right to cancel "consumer approval transactions," which must be "initiated by face-to-face solicitation away from the regular place of business of the merchant," WIS. STAT. § 423.201(1)(a)); 15 U.S.C. § 1635(a) (allowing rescission when a consumer gives a security interest "in any property which is used as the principal dwelling of the person to whom credit is extended"). To engage on these topics, I would have to try to develop McNeil's legal arguments for her, which would require me to abandon judicial neutrality.

---

[7] The shop's report on this diagnosis begins by apparently quoting, in lower case, a reported problem by McNeil, followed by the shop's diagnosis in capital letters:

> brake comes on then the collision warning light comes on when driving when no cars are around. NORMAL OPERATION ON ROAD-TEST, SCAN FOR DTC AND NO CODES ARE STORED, VISUAL INSPECTION—NO DAMAGE TO FRONT BUMPER. RADAR BRACKET IS SLIGHTLY PUSHED BACK WHICH MAY INDICATE A MINOR ACCIDENT. ADJUST BRACKET AND ROAD-TEST AGAIN. NO WARNING LAMPS. PERFORM CALIBRATION PROCEDURE. NORMAL OPERATION AT THIS TIME.

¶21    In another possible argument, McNeil asserts that Carvana "breached customer privacy," but she is apparently referring to the privacy interest of a different Carvana customer, not McNeil herself. It is sufficient to reject this argument that McNeil does not develop an argument about how she could have standing to claim a breach of this other person's privacy.

¶22    Turning to a separate possible argument, in the circuit court McNeil asserted that Carvana "inspected my Lincoln before I got to inspect the [Hyundai], which I find in violation of consumer laws." But when the court unambiguously asked her to identify "any consumer law that require[d]" Carvana to allow her some form of earlier or different inspection of the Hyundai, she replied, "No, not specifically written for that." This was a concession that McNeil does not have an argument along these lines.

¶23    McNeil asserts on appeal that the agreement is "a contract of adhesion" and that it is "unconscionable." But she forfeited these arguments by failing to raise them at trial.

¶24    In a similar vein, McNeil asserts that the circuit court should have appointed counsel to represent her in these proceedings, but she fails to direct us to record evidence that she made any such request to the court. To the extent that she now requests that this court request pro bono counsel to represent her in this appeal, which is a step that this court has taken on rare occasions in civil matters, I decline the request. It is sufficient to note that McNeil fails to identify an issue with potential merit or an issue that calls for potential law development.

¶25    McNeil on appeal asserts that Carvana committed some error or omission regarding registration of the Hyundai and also suggests that Caravan's use of artificial intelligence (by which she apparently means the use of a chat bot

for some of its communications with her) created liability in some manner. I reject both of these arguments for the same two reasons. First, McNeil fails to develop either potential issue on appeal based on record evidence and applicable law. Second, the circuit court lacked a basis to rule in her favor on either issue because she failed to pursue either topic at the trial. McNeil now asserts that Carvana's failure to "accurately register [the] Hyundai" "should have been the focus of this trial," but she did not mention this topic at the trial.

## CONCLUSION

¶26 For all these reasons, I affirm the circuit court.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.