TOWN OF JANESVILLE, Plaintiff-Appellant,

v.

ROCK COUNTY, Defendant-Respondent.†

Court of Appeals

*No. 89-0844. Submitted on briefs October 17, 1989.—Decided December 5, 1989.*

(Also reported in 451 N.W.2d 436.)

†Petition to review denied.

For plaintiff-appellant, there were briefs submitted by *John H. Andrews* and *Mark D. Kopp* of *Consigny, Andrews, Hemming & Grant, S.C.* of Janesville.

For defendant-respondent there was a brief by *Thomas A. Schroeder,* Rock County Corporation Counsel of Janesville.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   The town of Janesville appeals a summary judgment in favor of Rock County dismissing the town's claim to collect fees from the county for fire protection services. The town contends that both sec. 66.60(16)(a), Stats. (1987–88) and sec. 60.55(2)(b), Stats. (1985–86),[1] authorize it to levy this fee. We hold that sec. 60.55(2)(b) allows the town to charge the county for fire protection on a per call basis, but that sec. 66.60(16)(a) is not applicable to the facts of this case. We also hold that summary judgment should be entered for the town on the liability issue. However, because the town calculated its fee in an impermissible fashion, we remand this matter for the trial court's determination of the amount owed to the town.

A stipulation has been reached regarding most of the facts relevant to this case. The town of Janesville contracts with the city of Janesville to provide fire protection services to the town. Included within the town's

---

[1]Section 60.55(2)(b) was modified, effective May 17, 1988. Unless otherwise indicated, it is the 1985–86 language that we refer to throughout the opinion.

boundaries are several county properties that receive the benefit of these fire protection services. Until 1987, the city did not charge the town for fire protection services provided to these properties. When the city changed its policies, substantially increasing the cost of fire protection to the town, the town attempted to pass along the additional costs to the county. The county has refused to pay the town for these services. It is not disputed that the county received these services and that, in fact, forty-five fire calls were made to county properties within the town's boundaries between January 1, 1987, and September 28, 1988.

Summary judgment methodology is the same for trial and appellate courts. *Ford Farms, Ltd. v. WEPCO,* 145 Wis. 2d 650, 654, 430 N.W.2d 94, 95 (Ct. App. 1988). Summary judgment methodology prohibits a court from deciding an issue of fact. *Id.* at 655, 430 N.W.2d at 95. The court must only determine whether a factual issue exists. *Id.* If a factual issue exists, summary judgment is inappropriate. *Id.* at 655, 430 N.W.2d at 95–96. Our review is de novo, and no deference is accorded the trial court's determination. *Bank of Sun Prairie v. Esser,* 151 Wis. 2d 11, 18, 442 N.W.2d 560, 562 (Ct. App. 1989).

Section 60.55(2)(b) provides: "The town board may: . . . (b) Charge property owners a fee for the cost of fire calls made to their property."² The county advances sev-

²Section 60.55(2)(b) currently reads: "Charge property owners a fee for the cost of fire protection provided to their property under sub. (1)(a) according to a written schedule established by the town board." However, the applicability of the current sec. 60.55(2)(b) was neither briefed nor addressed by the trial court. Therefore, this decision only concerns itself with the period from January 1, 1987, until May 16, 1988. We also reject both parties' arguments that the current sec. 60.55(2)(d) is merely a clarifica-

eral reasons why this language should be held inapplicable, the most persuasive being the general rule of statutory construction that:

> Statutory provisions which are written in such general language as to make them reasonably susceptible to being construed as applicable alike both to the government and to private parties are subject to a presumptive rule of construction which exempts the government from their operation in the absence of other particular indicia supporting a contrary result in particular instances.

*Wisconsin Veterans Home v. Division of Nursing Home Forfeiture Appeals,* 104 Wis. 2d 106, 110, 310 N.W.2d 646, 648 (Ct. App. 1981) (quoting 3 Sands, *Statutes and Statutory Construction,* sec. 62.01 at 63 (4th ed. 1974)). Although we start with this presumption of inapplicability, several factors operate to overcome it.

*Veterans Home* was followed by *Lakeland Nursing Home v. Division of Nursing Home Forfeiture Appeals,* 118 Wis. 2d 636, 348 N.W.2d 523 (1984). In that case, a county-operated nursing home sought exemption from the same statutory forfeiture provisions at issue in *Veterans Home.* Our supreme court declined to extend the exemption from state-run homes to county-run homes. The court stated:

> [W]e are concerned that adoption of Lakeland's argument might cast doubt as to whether any statutory forfeiture provision should be applied to the county if the county is not expressly mentioned. This construction has not generally been advocated.

tion of the old statute. The present language regarding a schedule of fees and the removal of the "per call" limitation are substantive changes with no retroactive effect.

*Lakeland,* 118 Wis. 2d at 640, 348 N.W.2d at 525. The court also differentiated *Lakeland* from *Veterans Home* on the basis that this was not a case of two co-equal branches of government shuffling funds back and forth and, in effect, robbing Peter to pay Paul. The court also held that making the county subject to the forfeitures comported with the legislative intent of setting minimum standards for nursing home care. It is worth noting that *Lakeland,* the court's most recent pronouncement on whether government bodies must comply with general statutes, did not once mention the presumption of inapplicability.

In addition to *Lakeland,* our attention is also drawn to Sands' treatise, *Statutes and Statutory Construction* (cited with approval in *Veterans Home*).[3] He states, "where the sovereign claims the benefits of a statute it is usually bound by the incidental conditions attached to them, except where they would constitute an undue hardship on the government." 3 Sands, *Statutes and Statutory Construction,* sec. 62.02 at 123 (4th ed. 1986) (footnotes omitted). This is not a case such as *Veterans Home* or *State ex rel. Dept. of Public Instr. v. DILHR,* 68 Wis. 2d 677, 229 N.W.2d 591 (1975), where one branch of the government sought to regulate another without providing any corresponding benefits. Section 60.55 compels the town to provide fire protection services to

[3]Sands is also cited with approval in numerous other Wisconsin cases, among them *B.M. v. State,* 101 Wis. 2d 12, 19, 303 N.W.2d 601, 605 (1981); *Jessen v. State,* 95 Wis. 2d 207, 213, 290 N.W.2d 685, 688 (1980); *Midwest Mut. Ins. Co. v. Nicolazzi,* 138 Wis. 2d 192, 197–201, 405 N.W.2d 732, 735–36 (Ct. App. 1987); *State v. Trongeau,* 135 Wis. 2d 188, 193, 400 N.W.2d 12, 14 (Ct. App. 1986) and *Rossie v. Department of Revenue,* 133 Wis. 2d 341, 351–52, 395 N.W.2d 801, 806 (Ct. App. 1986).

areas within its boundaries. The county is a beneficiary of this service. As a beneficiary, it is appropriate that the county pay for fire calls to its property as provided by sec. 60.55(1)(b).

Other factors also weigh against the rigid application of this presumption.

> The stringency of the rule should be relaxed where the demands of a contrary policy include the government within the purpose and intent of a statute. Such a policy may be reflected from one or both of two sources: *First*, where the objective of a statute could not be accomplished without including the government . . .. *Second*, a contrary policy is indicated where the inclusion of a particular activity within the meaning of the statute would not vitally interfere with the processes of government.

Sands, *supra*, sec. 62.02 at 123–24 (emphasis in original). It is these factors which seemed to overcome the presumption of nonapplicability in *Lakeland*.

The intent of sec. 60.55 appears clear; the legislature decided that towns should provide adequate fire service and have the ability to fund it. Although we cannot say exempting other governmental units from fire call fees would render the accomplishment of these intentions impossible, it would place a heavy burden on some towns.[4] In *Lakeland*, our supreme court addressed the same concept holding that if the county were exempt from the statute, the state's ability to enforce its regulatory scheme would be "unnecessarily hampered." *Id.* at 642, 348 N.W.2d at 525. The town's ability to fund and

---

[4]The town argues that based on stipulated facts, in 1988, providing fire service to county properties cost each town member $26.48, as opposed to $.57 per person if the costs had been diffused across the county.

provide adequate fire protection services, as mandated by the state, would be similarly hampered if it were forced to bear the full cost of serving county properties within its boundaries.

We also fail to see how paying fire call fees would vitally interfere with county governance. As we noted earlier, this is not a case where the town seeks to regulate the county or limit or influence the discretion exercised by the county or its agents. Certainly the county would prefer not to spend the money. However, as stated earlier, this case involves the provision of basic services, not a mere juggling of accounts. One way or another, the money will be spent for the county's benefit. Contributing toward the cost of fire protection is not the type of interference contemplated by this canon of statutory construction.

The next issue is whether the town can charge the county $76,252 for fire protection in 1987 and $79,459 for 1988. The town calculated this amount based on the valuation of county properties within the town. Although sec. 60.55(2)(b) provides that the town can charge for these services on a per call basis, the town contends that it may calculate its charges to the county based on valuation of county properties by virtue of sec. 66.60(16)(a), Stats., which provides:

> In addition to all other methods provided by law, special charges for current services rendered may be imposed by the governing body by allocating all or part of the cost to the property served. Such may include, without limitation because of enumeration, snow and ice removal, weed elimination, street sprinkling, oiling and tarring, repair of sidewalks or curb and gutter, garbage and refuse disposal, sewer service and tree care.

Although a specific statute usually controls over a more general one, sec. 66.60(16)(a) provides a mechanism "[i]n addition to all other methods provided by law" to impose charges for services rendered by the governing body. We see no conflict between that statute and sec. 60.55(2)(b), which requires us to limit the language in either of them, and we cannot draw a principled distinction between services such as snow removal and fire protection.

Generally, we have interpreted sec. 66.60(16)(a) quite broadly. In allowing a city to charge for electrical service under the statute, this court stated, " 'current services rendered' cannot reasonably be read as limited to the class, type or nature of the services enumerated in subsec. (a)." *Laskaris v. City of Wisconsin Dells,* 131 Wis. 2d 525, 532, 389 N.W.2d 67, 70 (Ct. App. 1986). We have approved levying charges on a district basis, even when a property is not specially benefited by the service. *Grace Episcopal Church v. City of Madison,* 129 Wis. 2d 331, 336–37, 385 N.W.2d 200, 203 (Ct. App. 1986). Also, we have allowed special charges under sec. 66.60(16)(a) when other property owners pay their share of the costs of the service in a different manner. *Rubin v. City of Wauwatosa,* 116 Wis. 2d 305, 316, 342 N.W.2d 451, 456 (Ct. App. 1983). However, we distinguish the case before us, not on the basis of the type of service or the payment scheme, but because the statute allows a special charge only for services which are actually performed.

Section 66.60(16)(a) contemplates charges for services rendered, that is services actually done or performed. This language limits the town to charging only for services actually provided and not for services that may be available but not utilized. Section 66.60(16)(a) is not intended to provide a municipality-wide funding mechanism for items such as public schools, libraries

and other municipality-wide services that are not necessarily utilized by every property owner. Those items are of equal benefit to the entire community and should be paid out of general property tax funds.

The town may argue that they did, in fact, provide the service to the county, as evidenced by the number of fire calls made to county properties. However, the town's method of computing the charge goes to the cost of the availability of the service and not the cost of performing it, i.e., making fire calls to the county's properties. The amount the town seeks may be reasonable on this basis, but this has not been demonstrated to this point.

Finally, this case is best served by proceeding under sec. 60.55(2)(b). Section 66.60(16)(a) provides no more than an equivalent remedy, the costs of fire services rendered on a per call basis. Additionally, the county's argument for immunity from the operation of the statute is much stronger under sec. 66.60(16)(a). The town is not compelled by sec. 66.60 to offer fire protection or any other service to the county. Allowing the town to use sec. 66.60(16)(a) in this case could potentially open the door for municipalities to assess special charges for a host of services a county or other government body neither seeks nor needs. It is sec. 60.55 that obligates the town to provide these services for the county, and it is under that statute the town should proceed. We decline to apply sec. 66.60(16)(a) to the county, and therefore order the dismissal of the portion of the complaint based on this statute.

Next, the county appears to claim, and the trial court so held, that the town's faulty calculations rendered its entire attempt to collect under sec. 60.55(2)(b) amenable to summary judgment. We disagree. The town has proceeded under sec. 60.55(2)(b) to this point. Its

attempts to bill the county were labeled as "Fee for cost of providing fire calls by Town of Janesville to Rock County owned facilities . . .." Its complaint specified that the town was proceeding under sec. 60.55(2)(b). Despite the town's errant attempt to calculate the amount the county owed, the county was on notice that it was being charged for fire calls.

Section 60.55(2)(b), the applicable case law, and the rules of statutory construction convince us that the county is liable for fire calls provided to it by the town. The county has stipulated that these calls were made to its properties. Pursuant to sec. 802.02, Stats., the trial court should have ordered summary judgment in favor of the town on this issue of liability.[5]

The town argues that we are being unduly formalistic in requiring it to break down its fee into a per fire call itemization. They suggest they will simply take the amount owed based on the property valuations and divide it by the number of fire calls. This raises numerous problems concerning whether the per call fee would then be reasonable or whether the county is being singled out and forced to carry a heavier financial burden than other consumers of fire protection services. These issues however are not ripe for determination by this court. Therefore, we remand this question to the trial court for a determination of the amount the county owes the town, based on a reasonable per call calculation. If the town cannot or will not calculate its fee in this manner, then obviously the county owes nothing despite our ruling as to liability.

---

[5]Section 802.08(2) provides in part: "A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

In conclusion, we affirm that portion of the summary judgment that dismissed the town's claims premised on sec. 66.60(16)(a). We reverse the summary judgment on the claims under sec. 60.55(2)(b) and direct the trial court to enter summary judgment in favor of the town on the issue of liability. Finally, we remand for a determination of the amount owed to the town by the county calculated on a reasonable per call basis. We reject the county's motion to declare the town's appeal frivolous. *See Lamb v. Manning,* 145 Wis. 2d 619, 630, 427 N.W.2d 437, 442 (Ct. App. 1988).

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded with directions. Costs denied to both parties.